OPINION
Defendant-appellant Richard A. Beckett appeals his conviction and sentence from the Holmes County Court of Common Pleas on one count of burglary, a violation of R.C. 2911.12(A)(2), one count of burglary, in violation of R.C. 2911.12(A)(4), one count of vandalism, in violation of R.C. 2909.05(A) and one count of petty theft, a violation of R.C.2913.02(A)(1). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On November 12, 1999, the Holmes County Grand Jury indicted appellant on one count of burglary, in violation of R.C. 2911.12(A)(2), one count of burglary, in violation of R.C. 2911.12(A)(4), one count of vandalism, in violation of R.C. 2909.05(A), and one count petty theft, in violation of R.C. 2913.02(A)(1). At the arraignment on November 12, 1999, appellant entered a plea of not guilty to each count of the indictment. At the arraignment, the State of Ohio moved to dismiss the petty theft charge for speedy trial reasons. The trial court granted the State's motion.[1]
On April 4, 2000, the matter proceeded to trial before a jury. The following facts were adduced at trial:
During the evening of October 14, 1999, appellant went to Canton, Ohio, with Sandra Ellis to purchase and smoke crack cocaine. After driving around and smoking the crack cocaine, appellant and Ellis returned to Millersburg, Ohio. When they arrived in Millersburg, Ellis stopped to check on her children, leaving appellant alone in the van in which they were traveling. When Ellis returned to the van, appellant was gone.
Meanwhile, Ruth Waltman was alone in her home, at approximately 11:00 P.M., when she heard voices and her dog barking. Waltman and her husband lived in a home at the end of a subdivision and had no neighbors to either side or to the rear of their home. Waltman then heard glass breaking, pounding and crashing around in her home and glass breaking again. As a result, she dialed 9-1-1. When police responded, they first went to a neighbor of the Waltmans. There they encountered a man, appellant, who was bleeding heavily from his left arm. Appellant had on just one sock and no shoes. As a patrolman approached appellant, the patrolman heard appellant say that Ellis had pushed him through a window. Appellant further stated that he had been chased and pushed through a window. At one point, appellant stated that, in order to get away from his pursuers, he broke out a large window and ran to the neighbors for help.
Appellant was taken to a hospital for treatment. While at the hospital, appellant was informed of his rights pursuant to Miranda and spoke with officers. Appellant told the officers essentially what he had told them earlier, except that he stated he had used a stick to break out a small window to get into the Waltman's home and used a chair to break out the large window from which he exited.
Prior to trial, appellant was evaluated by Dr. James Sunbury, a psychologist. Dr. Sunbury testified that appellant had told Sunbury that appellant had been using crack cocaine and arguing with his girlfriend on October 14, 1999. According to Dr. Sunbury, appellant came to believe that he was in danger from people which Ellis may have persuaded to beat him up. Dr. Sunbury stated that appellant told Sunbury that appellant had panicked and ran, losing a shoe. Dr. Sunbury testified that he believed that, at the time appellant entered the Waltman residence, appellant was afraid, believed that he might have been being chased, and that he entered the home because of fear. Dr. Sunbury testified that panic and paranoia are common results of cocaine dependency.
Following the conclusion of the presentation of evidence, on April 5, 2000, the jury returned a verdict of guilty on both counts of burglary and guilty on one count of vandalism. The State elected to have appellant sentenced on Count I, Burglary, R.C. 2911.12(A)(2), a second degree felony, instead of the allied offense of similar import Count II, Burglary, R.C. 2911.12(A)(4), a felony of the fourth degree.[2] The trial court accepted the State's election. Thereupon, the trial court ordered that a pre-sentence investigation be conducted and set a sentencing hearing date.
Subsequently, on May 1, 2000, a sentencing hearing was conducted before the trial court. As Burglary, appellant was sentenced to a term of four years of incarceration. As to vandalism, appellant was sentenced to eleven months of incarceration. The trial court ordered that these sentences be served concurrently.
It is from appellant's conviction and sentence, that appellant appeals, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE JURY VERDICT CONVICTING THE DEFENDANT/APPELLANT RICHARD BECKETT ON COUNT ONE OF THE INDICTMENT, BURGLARY, A FELONY OF THE SECOND DEGREE, IN VIOLATION OF R.C. 2911.12(A)(2) WAS CONTRARY TO LAW BECAUSE IT WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE IN VIOLATION OF THE DEFENDANT/APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE
SECTION 16 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO GRANT THE DEFENDANT/APPELLANT'S MOTION FOR ACQUITTAL MADE AT THE CLOSE OF THE STATE OF OHIO'S CASE, AT THE CLOSE OF EVIDENCE, AND AFTER THE TRIAL.
 ASSIGNMENT OF ERROR III THE JURY VERDICTS OF GUILTY ON ALL THREE COUNTS OF THE IN [SIC] INDICTMENT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR IV THE FAILURE OF THE DEFENDANT/APPELLANT'S TRIAL COUNSEL TO FILE A MOTION TO SUPPRESS EVIDENCE TO SUPPRESS STATEMENTS OBTAINED FROM THE DEFENDANT/APPELLANT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION.
 I III
In appellant's first and third assignments of error, appellant argues that the jury verdict convicting him of one count of burglary is not supported by sufficient evidence and is against the manifest weight of the evidence. We will consider these assignments of error together.
In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins (1997),78 Ohio St.3d 380, 387 (citing State v. Martin (1983), 20 Ohio App.3d 172,175). Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of syllabus.
In the case sub judice, appellant challenges his conviction on one count of burglary, in violation of R.C. 2911.12(A)(2). Revised Code 2911.12(A)(2) states the following, in pertinent part:
No person, by force, stealth, or deception, shall . . .:
 (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense.
R.C. 2911.12(A)(2)
It is undisputed that appellant entered the victim's home by force and committed trespass. The question on appeal is whether there was sufficient evidence upon which a jury could have found that appellant intended to commit an offense, to wit: theft, when he entered the victim's home. Appellant contends that due to his voluntary ingestion of cocaine on the night of the incident, he was unable to form the requisite intent to commit theft. Appellant contends that, due to the cocaine use, he was suffering from paranoia and fear, believing that he was being chased and/or assaulted. Appellant asserts that he entered the Waltman's home either by being pushed through a window and/or to escape the "pursuers" he believed were chasing him. This court, however, finds that appellant's burglary conviction was supported by sufficient evidence.
Evidence at trial established that appellant approached the victim's home late at night, at approximately 11:00 P.M. Appellant walked past approximately 15-20 homes before approaching the victim's home. The victim's home is isolated, located at the back of its subdivision, and has no homes to either side or behind. Appellant went around back of the home, to a small rear window which opened into the laundry room of the home. Appellant removed the screen from the window and then broke the window itself. Upon breaking the window, appellant cut his arm severely and began to bleed profusely. Appellant moved through the laundry room and then into and around the adjoining family room. Thereafter, appellant exited the home by breaking a window in the family room. In leaving the home, appellant took an antique chair with him. The chair was subsequently found outside, on the other side of the home.
These facts are sufficient for the jury to infer that appellant entered the home with the intent to commit a theft offense. The jury could infer that once his arm was severely cut, his plans to commit the theft were interrupted.
Appellant further contends that the jury's verdict was against the manifest weight of the evidence because appellant established the affirmative defense of voluntary intoxication and duress [3]. However, based upon the conflicting evidence presented, the jury was free to reject appellant's affirmative defense of voluntary cocaine intoxication and duress.
The police officers who observed appellant at the time of his arrest indicated that appellant did not appear to be intoxicated or panicky. Patrolman Kim Herman testified as follows:
 When you first spoke with him that night would you describe his demeanor or emotional state as being excited or panicked in any way?
 A. Not overly obviously with his wound. Considering his wounds and so forth I didn't see anything else wrong with him.
 Q. Were you able to have a conversation with him, understand him and have him understand you?
A. Yes.
 Q. He have any difficulty in expressing himself in terms of being coherent with his language?
A. No.
Q. What about later at the hospital or at the jail?
A. No. He was very coherent then.
Tr. 70-71
 Q. How did he appear to you otherwise in terms of his condition other than the bleeding?
 A. Other than, like I said, the bleeding and so forth, he seemed normal.
Q. Was he acting in an unusual manner in any way?
A. No.
Tr. 60
Sargent Roger Estill further testified:
 Q. How would you describe the defendant's emotional state and demeanor at the time you first observed it?
 A. As far as the injury I think he was concerned about that. Other than that I didn't see anything out of the ordinary for a person injured like that.
Q. Was he acting panicky in any way?
A. No.
Q. Was he able to converse with you?
A. Yes, he was.
Tr. 78
In addition to the evidence that appellant did not appear intoxicated or panicky, there was no direct evidence that appellant ingested cocaine that night. At the hospital, appellant denied taking cocaine that night and refused to take a drug test. Tr. 81-82. Appellant's statements to the police that he had not taken cocaine that night were controverted by his purported statements to Dr. Sunbury. Dr. Sunbury testified that appellant told him that he had ingested cocaine that night. Ellis, who was with appellant the night of the incident, testified that appellant had taken cocaine that night. However, the jury was free to consider the credibility and weight to be given to the conflicting testimony. We find that the jury did not lose its way in rejecting appellant's affirmative defenses of voluntary intoxication or duress.
In conclusion, we find that there was sufficient credible evidence upon which the jury could base appellant's burglary conviction. Likewise, we find that the verdict is not against the manifest weight of the evidence and that the jury did not lose its way or create a manifest injustice.
Appellant's first and third assignments of error are overruled.
 II
In the second assignment of error, appellant argues that the trial court erred as a matter of law when it failed to grant appellant's motions for acquittal made at the close of the State's case, at the close of the evidence and after trial. We disagree.
Pursuant to Crim.R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the . . . complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. . . ." In considering an appeal concerning the sufficiency of the evidence, our standard is as follows: "[t]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, 273.
Pursuant to our findings in assignment of error I and III, we find appellant's argument must fail. We have found that the burglary conviction was based upon sufficient evidence and not against the manifest weight of the evidence. Therefore, we find that the trial court did not error in denying appellant's motions for acquittal, pursuant to Crim. R. 29(A).
Appellant's second assignment of error is overruled.
 IV
In the fourth assignment of error, appellant argues that appellant's trial counsel was ineffective when he failed to file a motion to suppress statements obtained from appellant. We disagree.
The standard of review for a claim of ineffective counsel was established in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 and adopted by Ohio in State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases set forth a two-pronged analysis.
The first prong of the analysis requires a showing that counsel's assistance was ineffective in that it fell below an objective standard of reasonable representation and violated essential duties to the client. The second prong requires a showing of actual prejudice by counsel's ineffectiveness such that but for the counsel's unprofessional error the outcome of the trial would have been different. A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. Bradley, 42 Ohio St.3d at 143 (citing Strickland,466 U.S. at 697.)
We note that a properly licensed attorney is presumed competent. SeeVaughn v. Maxwell (1965), 2 Ohio St.2d 299; State v. Calhoun (1999),86 Ohio St.3d 279. In reviewing a claim of ineffective assistance of counsel, the United States Supreme Court has stated:
 Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v. Louisiana, supra, 350 U.S., at 101, 76 S.Ct., at 164. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).
 Strickland v. Washington, 466 U.S. 668, 689-690. In light of the Supreme Court's guidance, debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton
(1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189.
We find that defense counsel's decision to not move to suppress appellant's statements to police may well have been a trial tactic. Appellant's statements to police confirm appellant's defense and affirmative defense that he was under such an extreme influence of cocaine that he became paranoid and fearful. Appellant's statements support his contention that he believed he was being chased and assaulted when he entered the Waltman's home.[4] Appellant further claimed, based upon his cocaine use, that he was not capable of forming an intent to commit theft. By allowing the admission of appellant's statements to police showing that he believed he was being chased and pushed through windows, counsel was able to present this defense and his affirmative defenses of voluntary intoxication and duress without putting appellant on the witness stand. This may have been of particular importance since the record shows that appellant has three prior felony convictions, including a conviction for breaking and entering with intent to commit larceny.[5]
Therefore, since we find that appellant's defense counsel's actions are well within the realm of trial tactics, we find that appellant's assignment of error must fail.
Appellant's fourth assignment of error is overruled.
We will not consider the assignments of error raised in appellant's prose Supplemental Brief filed without leave of court on March 12, 2001. Counsel was appointed for appellant and filed a brief in this matter. No accused has the constitutional right to represent himself as co-counsel where the state has appointed an attorney to represent him. State v.Thompson (1987), 33 Ohio St.3d 1, 6. Further, we note that appellant sought to present a supplemental brief, including assignments of error not presented in his counsel's merit brief. Appellant did not seek this court's leave to file a supplemental brief, in contradiction of App. R. 16.[6] Therefore, this court will not consider appellant's pro se
supplemental brief.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Holmes County Court of Common Pleas is affirmed. Costs to appellant.
Edwards, P.J. Hoffman, J. and Boggins, J. concur.
[1] In the Journal Entry regarding the arraignment, the trial court noted that it had discovered that the trial judge who presided at the arraignment had previously prosecuted the appellant. Therefore, in order to avoid any appearance of impropriety, that trial judge recused himself from the case and another judge was assigned.
[2] Pro Tunc Judgment Entry filed May 1, 2000.
[3] The trial court provided the following definitions in its instructions to the jury, without objection:
 Intoxication Intoxication exists when a person consumes a quantity of an intoxicating drug sufficient to adversely affect his mental processes and conduct and to deprive him of that clearness of intellect that he would otherwise have possessed.
 Intoxication is not an excuse for an offense, however, such evidence is admissible for the purpose of showing that the defendant was so intoxicated that he was incapable of forming the purpose or having knowledge to commit the offenses of burglary or vandalism.
 On this issue the burden of proof is upon the defendant to establish by a preponderance or a greater weight of the evidence that at the time in question he was so influenced by an intoxicating drug that he was incapable of forming a purpose or having the knowledge to commit the offense.
Tr. at 126-127.
 The defendant has claimed the defense of duress claiming that he acted out of fear for his life or of great bodily harm. When a person is forced to participate in an offense against his will because he honestly believes and had good reason to believe that he is in immediate danger of death or great bodily harm and that there was no reasonable opportunity to escape, he is entitled to be acquitted on the ground of duress.
Tr. at 128.
[4] Specifically, appellant's challenge is based upon the following testimony:
 Um, when I [Officer Kim Herman] was approaching the subject [appellant], I heard him say that Sandy Ellis had pushed him through a window. That was before I knew exactly who he was. When I seen who he was I went and placed him under arrest for the warrant. And when I grabbed him and seen all the blood, I asked him what happened to him and I believe he said that he'd been pushed or somebody was chasing him and he was pushed through a window.
Tr. at 69.
. . .
 When is the next time you [Officer Herman] had an opportunity to talk with him or listen to what he [appellant] had to say?
 A. The next time was at the emergency room at the hospital. I went up and advised him of his Miranda rights and at that time he waived his rights, and I transported him to the Holmes County Jail. At that time I went and —
Q. He had already been treated by then?
 A. Yes. He was treated. And at the jail I went and got the copy of the warrant that I had arrested him for and served him the warrant and told him that he was going to be held in jail for the offense of breaking into the house. And he told me that basically he didn't understand, that he was just trying to get away from somebody and didn't understand that why he was being charged.
Q. Anything else he discussed at that time?
A. No.
Tr. at 70.
. . .
 Q. Did you [Sergeant Roger M. Estill] have a conversation with him [appellant]?
A. Yes, I did.
Q. And what did he tell you?
 A. At first he told me he had been pushed through the residence. He had been chased by three people. And he had gone to the back of the window and had been pushed into the window. He then indicated at the scene that he broke out the back window with the chair and ran over to the Rottman residence.
 Q. Did he indicate to you what he did while he was inside the residence?
 A. At one point he said that the suspect had come into the window — that he had also, the small window, and was pursuing him inside the house.
Q. And how long did this conversation take place?
 A. A matter of ten minutes, I suppose, until the squad arrived and began to attend to his medical needs.
Tr. at 78.
. . .
 Q. Did you [Sergeant Estill] have any other conversation with the defendant [appellant] that night?
 A. Yes I did. After I was at the scene I went out to the hospital to see him out there.
Q. And where did you talk to him in the hospital?
A. In the emergency room.
 Q. Was this before or after or while he was being treated?
A. Actually it was while Dr. Weaver was treating him.
 Q. And you were present during the time he was treated?
A. Yes.
Q. What did he tell you at the hospital?
 A. Essentially the same story except he used the stick to break out the window and he used the chair inside the house to fend off the person that was attacking him. He indicated that the person pushed him into the big window. He then used the chair to break the window out to exit the residence.
 Q. So now he's indicating that a person followed him through the small window?
A. Yes.
 Q. And that he struggled or scuffled in some manner inside the residence?
A. Inside the family room.
 Q. And then he indicates that this person pushed him into or through the window?
 A. He indicated that he pushed him into the window causing it to break, being the larger window.
. . .
 Q. Did you have any other conversation with him at the hospital that you can recall?
 A. The story changed at one point that he had picked up the stick outside of the Waltman residence to a point that he picked it up along a fence line that he had run from the Adam's Street area.
 Q. Was he able to give you any kind of description of any of these people?
 A. The only thing he could say was that they were maybe six foot tall, and I believe at one time he said he had a white shirt.
Tr. at 80-81.
. . .
 Q. I think I neglected to ask you about your conversation with the defendant [appellant] the next day at the Holmes County Court. Could you [Sergeant Estill] tell us about that?
 A. Mr. Beckett appeared in court on the original charge of the warrant, and I went back up to at the courthouse to talk to him more about what had happened, what his perception was.
Q. And what did he tell you then?
 A. Essentially he told me the same story, that he had been chased.
Q. All right. Nothing new that day?
 A. No. No new indications or evidence presented at that time.
Tr. 85-86.
[5] The conviction for breaking and entering with intent to commit larceny was in 1993, in the State of Michigan.
[6] The appellant may file a brief in reply to the brief of the appellee, and, if the appellee has cross-appealed, the appellee may file a brief in reply to the response of the appellant to the assignments of errors presented by the cross-appeal. No further briefs may be filed except with leave of court. App. R. 16(C).